UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/5/2016___
```

-------------------------------------------------------------- X

UNITED STATES OF AMERICA,         :
                              :
         -against-             :        S2 14-CR-546 (VEC)
                              :
TYRONE FELDER,               :        OPINION & ORDER
      a/k/a "Meme"              :
      a/k/a "ManMan,"          :
KAREEM MARTIN,            :
      a/k/a "Heavy,"            :
      a/k/a "Reem,"             :
      a/k/a "Jamal Walker,"      :
                    Defendants.   :

-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

After a one-week jury trial, Defendants Tyrone Felder ("Felder") and Kareem Martin

("Martin") (collectively, "Defendants") were convicted of conspiracy to distribute and to possess

with the intent to distribute cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. §

846; and of using, carrying, possessing, and brandishing a firearm in connection with a drug

trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), and (2).  Defendants move

for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or a

new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  For the following

reasons, Defendants' motions are denied.

## BACKGROUND[1]

On February 8, 2016, the Defendants were charged in a five-count superseding

indictment.  *See* Feb. 8, 2016 Superseding Indictment (Dkt. 296) (hereinafter, "Indictment").

Count One charged both Defendants with conspiracy to distribute and to possess with the intent

---

[1]      The Court assumes the parties' familiarity with the evidence that was introduced at trial and with the
procedural history of the case.  The Court refers to exhibits by the exhibit number they were given at trial and
references to "Tr." refer to the trial transcript.

to distribute controlled substances—specifically 280 grams or more of cocaine base, cocaine, and

marijuana.  Counts Two and Three charged Felder with conspiracy to rob, and robbery, of

individuals in a commercial establishment in the Bronx in violation of 18 U.S.C. § 1951.  Count

Four charged that Felder used, carried, possessed and brandished firearms in connection with the

drug conspiracy charged in Count One and the robbery charged in Count Three.  Count Five

charged that Martin used, carried, possessed and brandished firearms in connection with the drug

conspiracy charged in Count One.

Trial began on June 13, 2016.  At the close of the Government's case, Felder and Martin

moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure,

Tr. 644:7-17, and their motions were denied, *id*. 644:18-19.

On June 20, 2016, the jury convicted both Defendants on Count One, acquitted Felder on

Counts Two and Three, convicted Felder on Count Four, and convicted Martin on Count Five.

As to the drug conspiracy charged in Count One, the jury made special findings that each

Defendant was responsible for possessing or possessing with intent to distribute two hundred and

eighty grams (280) or more of crack cocaine.  Tr. 817:6-9 (Felder); 817:24-818:2 (Martin).

Currently before the Court are Defendants post-trial motions for a judgment of acquittal

and a new trial pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure.[2]

## DISCUSSION

### I.   Legal Standard

#### A.  Rule 29

"'A defendant challenging the sufficiency of the evidence that led to his conviction at

trial bears a heavy burden,' . . . because [courts] must uphold the judgment of conviction if '*any*

---

[2]         The Court cites to the briefs as follows: Martin Mem. (Dkt 476), Felder Mem. (Dkt. 479-1), Gov't Opp. (Dkt. 499), Felder Reply (Dkt.486).

rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt.'"  *United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013) (quoting *United States v. Coplan*,

703 F.3d 46, 62 (2d Cir. 2012) and *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (alteration

omitted, emphasis in *Jackson*).  "A court examines each piece of evidence and considers its

probative value before determining whether it is unreasonable to find 'the evidence in its totality,

not in isolation,' sufficient to support guilt beyond a reasonable doubt."  *United States v. Goffer*,

721 F.3d 113, 124 (2d Cir. 2013) (quoting *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.

2000)).  Courts "'resolve all inferences from the evidence and issues of credibility in favor of the

verdict.'"  *United States v. Zayac*, 765 F.3d 112, 117 (2d Cir. 2014) (quoting *United States v.

Howard*, 214 F.3d 361, 363 (2d Cir. 2000)).  "'The jury's verdict may be based entirely on

circumstantial evidence.'"  *Goffer*, 721 F.3d at 124 (quoting *United States v. Santos*, 541 F.3d

63, 70 (2d Cir. 2008)) (alteration omitted).  "'A judgment of acquittal' is warranted 'only if the

evidence that the defendant committed the crime alleged is nonexistent or so meager that no

reasonable jury could find guilt beyond a reasonable doubt.'"  *United States v. Jiau*, 734 F.3d

147, 152 (2d Cir. 2013) (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004))

(alteration omitted).

### B.  Rule 33

"Federal Rule of Criminal Procedure 33(a) provides that 'upon the defendant's motion,

the court may vacate any judgment and grant a new trial if the interest of justice so requires.'"

*United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (quoting Fed. R. Crim. P. 33(a))

(alteration omitted).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict

stand would be a manifest injustice."  *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir.

2001).  "To grant the motion, 'there must be a real concern that an innocent person may have

been convicted.'"  *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *Ferguson*,

246 F.3d at 134) (alteration omitted).

## II.     Martin is Not Entitled to a Judgment of Acquittal or a New Trial

### A.  There Was Sufficient Evidence to Support the Jury's Conclusion That Martin Was a Member of a Single Narcotics Conspiracy

Martin asserts that although Count One alleged a single conspiracy, the proof at trial

"showed, at most, separate and independent conspiracies involving numerous crack cocaine and

marijuana dealers who lived in or socialized at the housing development."  Martin Mem. at 3.

According to Martin, the evidence was insufficient to establish Martin's membership in a single,

larger conspiracy.  Martin Mem. at 3.[3]  The Court disagrees.

"The essence of the crime of conspiracy . . . 'is the *agreement* . . . to commit one or more

unlawful acts.'"  *United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013) (quoting *United*

*States v. Jones,* 482 F.3d 60, 72 (2d Cir. 2006) (emphasis in *Praddy*)).  For a single conspiracy to

exist, it is not necessary for co-conspirators to "'have agreed on the details of the conspiracy, so

long as they agreed on the essential nature of the plan.'"  *Id.* (quoting *United States v. Berger*,

224 F.3d 107, 114 (2d Cir. 2000)).  In a single conspiracy, the goals of all participants need not

be "congruent . . . so long as the participants agree on the essential nature of the enterprise and

their goals are not at cross purposes."  *Id.* (internal quotation marks and citations omitted).

The Second Circuit "has gone quite far in finding single conspiracies in narcotics cases."

*United States v. Bertolotti*, 529 F.2d 149, 154 (2d Cir. 1975).  For example, "[i]n the context of

narcotics operations, . . . [the Second Circuit has] held that even where there are multiple groups

within an alleged conspiracy, a single conspiracy exists where the groups share a common goal

---

[3]      Martin argues that Count Five, charging him with using, carrying, possessing and brandishing a firearm in connection with the drug conspiracy, must be dismissed because the evidence was insufficient to support the predicate offense in Count One.  Martin Mem. at 7.

and depend upon and assist each other, and we can reasonably infer that 'each actor was aware of his part in a larger organization where others performed similar roles.'" *Berger*, 224 F.3d at 115 (quoting *Bertolotti,* 529 F.2d at 154); *see also United States v. Betancourt*, 645 F. App'x 66, 71 (2d Cir. 2016) (quoting *Berger*). So long as there is "'sufficient proof of mutual dependence and assistance,'" "'a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation.'" *United States v. Payne*, 591 F.3d 46, 61 (2d Cir. 2010) (quoting *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir.), *cert. denied,* 543 U.S. 999 (2004)) (alteration omitted). Moreover, "'[c]hanges in membership [and/or] differences in time periods . . . do not necessarily require a finding of more than one conspiracy.'" *Id.* at 61 (quoting *Jones,* 482 F.3d at 72).

The record evidence, when viewed in the light most favorable to the government, is more than sufficient to support a finding that Martin participated in a single conspiracy with Felder and other members of the Young Gunners (also known as the YGz) to engage in a common venture of selling crack cocaine, cocaine, and marijuana in River Park Towers. The jury heard from multiple witnesses—including Nenobia Washington, Corey McCollum, and Jorge Figueroa—that Martin and Felder were members of the YGz and that the YGz worked together and depended on each other to sell drugs. *See, e.g.*, Tr. 71-78 (Martin and Felder were frequently seen loitering outside River Park Towers with other YGz; Martin was seen selling drugs at least three to five times), 290-93, 296-99, 301, 308 (Martin and Felder were members of the YGz; the YGz worked together to sell drugs; Felder and Martin were frequently observed together selling drugs outside of River Park Towers); 187-93 (Felder and Martin were members of the YGz; the YGz worked together to sell drugs by referring customers to each other, combining drugs to sell, bagging drugs for distribution, and warning each other about police

presence).  The jury also heard testimony from New York City Police Department Detective

Desiree Gomez that Martin frequently hung out with others whom she knew to be drug dealers

and she had observed the drug dealers working together to steer customers, vouch for customers,

and alert each other to police presence. Tr. 362, 389-92.

       In addition, witnesses testified as to specific instances in which Felder, Martin, and other

Young Gunners worked together and depended on each other for assistance in selling drugs.

Detective Gomez testified that, on one occasion when she bought drugs from Martin, Anthony

Givens, from whom she had also bought drugs, recognized her and vouched for her so that she

could buy the drugs from Martin.  Tr. 362-64; GX 400 (video of transaction); GX 400A

(screenshot from video).  Washington testified about an incident in which she bought

approximately $300.00 worth of cocaine from Martin but, because she viewed the drug quality as

poor, she told Martin she would pay him only $150.00.  Subsequently, Felder, Martin, and

Jerome Thomas (whom she identified as another member of the Young Gunners) showed up at

her apartment in the middle of the night to collect the outstanding $150.00.  Tr. 238-43.  Finally,

multiple witnesses testified as to fights between the Young Gunners and security guards.

McCollum testified that, in one particular instance when a fight broke out between security

guards and Anthony Givens, Felder and Martin exited the Towers together and Felder threatened

the security guards with a gun.  Tr. 303-08.  David Pope, a handyman and electrician at River

Park Towers, also testified that Young Gunners would frequently fight with security guards in

the Towers and that he observed one fight in which Felder and Martin were together and Felder

had a gun.  Tr. 489-496.

In short, there was more than sufficient evidence to support the jury's conclusion that Martin was a member of a single overarching conspiracy with Felder and other YGz to sell crack cocaine, cocaine, and marijuana in River Park Towers.[4]

### B. There Was No Variance Between the Allegations in the Indictment and the Proof at Trial

Martin argues that "[b]ecause the indictment charged a single conspiracy to distribute cocaine, crack cocaine, and marijuana, but the evidence showed multiple conspiracies to do so, there was a variance between the allegations in the indictment and the proof at trial." Martin Mem. at 6. He further contends he suffered prejudice "because he was linked, at trial, with other individuals whose crimes involved violence and major narcotics distribution." *Id.* at 3.

A variance occurs "when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Banki*, 685 F.3d 99, 119 (2d Cir. 2012), *as amended* (Feb. 22, 2012) (quoting *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001)).  To prevail on a claim of variance, a defendant must also demonstrate prejudice. *Id.*

As discussed above, there was sufficient evidence from which the jury could conclude that Martin was a member of a single overarching conspiracy; accordingly, there was no variance between the indictment and the proof at trial.

### III.   Felder Is Not Entitled to a Judgment of Acquittal or a New Trial

Felder moves for acquittal on the grounds that "[t]he evidence was legally and factually insufficient to prove, beyond a reasonable doubt, the existence of an agreement that encompassed 280 grams or more of cocaine base." Felder Mem. at 2.  According to Felder, "the

---

[4]      Because Martin's argument for judgment of acquittal on Count Five is based entirely on his argument that there was insufficient evidence on Count One, his motion as to Count Five is also DENIED.

Government was required to prove that 'each conspirator must have specifically intended that some conspirator commit each element of the substantive offense'—e.g., distribution of 280 grams or more of cocaine base." *Id.* at 3 (quoting *Ocasio v. United States*, 136 S. Ct. 1423 (2016)). Felder contends that, even if the Government did prove that 280 grams or more of cocaine was *actually* distributed, the Government failed to prove that there was an *agreement* to distribute 280 grams of cocaine base. *Id.* at 3. He maintains that the Court erred in instructing the jury on what it needed to find relative to quantity because the Court "did not require a finding of an 'agreement' as to quantity, but permitted the jury to base its finding on a quantity of cocaine base that was actually distributed over a period of time – in aggregation." *Id.* at 4.

Felder's argument is based on a misunderstanding of the relevant case law and what the Government is required to prove relative to drug quantity. First, Felder is incorrect that, to prove conspiracy, the Government must prove that Felder specifically intended either that some conspirator distribute 280 grams or more of cocaine base or that the conspiratorial agreement included an understanding that 280 grams or more of cocaine base would be distributed. *Id.* at 3. It is true, as Felder notes, that the Supreme Court recently reaffirmed long-standing precedent that "each conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." *Ocasio*, 136 S. Ct. at 1432 (internal quotation marks, alteration, and citation omitted; emphasis in original). It is also true that, in the Second Circuit, the quantity of drugs involved in the defendant's crime constitutes an element of the offense that must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. *See Thomas*, 274 F.3d at 667; *see also United States v. Gonzalez*, 420 F.3d 111, 122-25 (2d Cir. 2005) ("[A] defendant cannot be convicted on an aggravated offense unless the statutory drug quantity is proved to a jury or admitted by the defendant").

But those two principles do not support Felder's argument. Section 841(a) of Title 21, United States Code, makes it unlawful for any person knowingly or intentionally to distribute or possess with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). Section 841(b) sets forth minimum and maximum penalties depending on the type and quantity of the controlled substance involved in the offense. 21 U.S.C. § 841(b). When interpreting § 841, the Second Circuit has

> [A]dhered to the principle that "the government does not have to prove that the defendant knew the specific nature and amount of the controlled substance for the enhancement provisions [in § 841(b)] to apply. This result derives from "the structure and language" of the provision, which "clearly indicates that the terms 'knowingly or intentionally' in § 841(a) modif[y] the conduct set forth in that sub-section of the statute, and not the penalty provisions in § 841(b)."

*United States v. Andino*, 627 F.3d 41, 45-46 (2d Cir. 2010) (quoting *United States v. Collado-Gomez*, 834 F.2d 280, 280-81 (2d Cir. 1987) (per curiam) and *United States v. King*, 345 F.3d 149, 153 (2d Cir. 2003) (per curiam)). In other words, to convict on a section 841 charge, the "*scienter* requirement is not type-specific"—"for example, the government need not prove that a defendant knowingly or intentionally possessed cocaine; rather, it need only prove that the defendant knowingly or intentionally possessed a controlled substance that was in fact cocaine." *Andino*, 627 F.3d at 46. Because a defendant can be convicted under section 841 without proof that he knew what type of drug was involved or its quantity, it would turn logic on its head to require, as Felder argues, that in order to prove conspiracy, the Government must prove that a conspirator specifically intended to possess or possess with intent to distribute a particular type and quantity of controlled substances—here, 280 grams or more of cocaine base.

The law in the Second Circuit is clear on the *scienter* requirement relating to drug type and quantity when a narcotics conspiracy is charged under 21 U.S.C. § 846. The Second Circuit has held that, when a defendant has directly and personally participated in the drug transactions

underlying a conspiracy charge, then the defendant is responsible for the type and quantity of those drug transactions; the government need not prove that the defendant had knowledge of either drug type or quantity. *Andino*, 627 F.3d at 47. When the defendant has not directly and personally participated in the underlying drug transactions, then the government must prove that the drug type and quantity were "at least reasonably foreseeable to the []defendant." *United States v. Adams*, 448 F.3d 492, 499-500 (2d Cir. 2006); *see also United States v. Johnson*, 633 F.3d 116, 118 (2d Cir. 2011) ("It is well settled that individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members." (citing *Payne,* 591 F.3d at 70)); *Andino*, 627 F.3d at 47 n.3 (distinguishing between the *scienter* requirement for defendants who directly and personally participated in the underlying drug transaction and those that do not); *United States v. Martinez*, 987 F.2d 920, 923-26 (2d Cir. 1993) (explaining that the reasonable foreseeability requirement for drug type and quantity descends from the theory of conspiratorial liability in *Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946), pursuant to which a conspirator may be accountable for any acts reasonably foreseeable in furtherance of the conspiracy).

Accordingly, contrary to Felder's contentions, the Government was not required to prove "agreement" as to the quantity of crack cocaine. *See United States v. Thompson*, 633 F. App'x 534, 539 (2d Cir. 2015) (summary order) ("'[T]he defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved.'" (quoting *United States v. Snow,* 462 F.3d 55, 72 (2d Cir. 2006) (citations omitted)).

The Court correctly instructed the jury that:

In making the quantity determination, you should include whatever quantity of the drug that was involved in the defendant's own actions and the actions of co-

conspirators taken as part of the conspiracy. You should include the quantity of
drugs with which the defendant and his co-conspirators were involved over the
course of the entire conspiracy, as long as the quantity was either known to the
defendant or was reasonably foreseeable to him and was within the scope of
criminal activity that he jointly undertook.

Tr. 788:3-12. The Court did not, as Felder contends, "merely direct[] the jury to base its quantity

determination on the amount of cocaine base 'actually' distributed." Felder Mem. at 4.[5]

There was more than sufficient evidence to support the jury's finding that the conspiracy

involved the possession and distribution of more than 280 grams of crack and that the quantity

was either known or reasonably foreseeable to Felder. Detective Gomez testified that she bought

two plastic twists of crack cocaine from Martin, which together weighed 0.157 grams. Tr. 355:3-

359:21; GX 106; GX 701. Assuming that each twist weighed approximately 0.0785 grams, the

conspiracy would have needed to sell approximately 3600 twists to reach 280 grams. The jury

heard more than sufficient evidence regarding the frequency of drug dealing at River Park

Towers to infer reasonably that the conspirators sold many more than 3600 twists of crack. In

fact, Felder does not dispute that. *See* Felder Mem. at 6.

The Government also presented ample evidence from which the jury could have

concluded that it was reasonably foreseeable to Felder that the conspiracy would distribute more

than 280 grams of crack. Again, the jury heard extensive testimony regarding the daily quantity

of narcotics sales at River Park Towers, by Martin, Felder, and other Young Gunners including

---

[5]      Even if the Court had erred in its instruction, the Defendant did not object during the charge conference and
the ultimate instruction was consistent with the Defendants' own proposed instruction:

In determining the quantity of narcotics that the conspiracy involved, you should hold a Defendant
responsible for all quantities which he personally and directly distributed or possessed with intent
to distribute, whether or not he knew the specific type or quantity of drugs involved and whether
or not that type or quantity were reasonably foreseeable to him. In addition, a Defendant is also
responsible for any quantity of narcotics distributed by co-conspirators, as long as the type and
quantity were known or reasonably foreseeable to the Defendant, and were within the scope of the
criminal activity that he jointly undertook.

Defs.' Proposed Jury Instruction, at 40-41 (Dkt. 410).

Jerome Thomas and Frederick Allen.  And they heard testimony that the YGz frequently worked together to sell drugs.  McCollum testified that he saw Felder selling drugs three to four times a day and, although he did not know what drug Felder was selling, the individuals he observed purchasing drugs from Felder appeared to be crack users.  McCollum also testified that Felder and Martin were always together selling drugs outside River Park Towers and that he also witnessed Martin sell drugs about three or four times a day.  Tr. 299-301.  Washington testified that she saw members of the Young Gunners selling drugs ten to twenty times a day. Tr. 191. Undercover Detectives Gomez and Thomas bought at least ten twists on one day from Jerome Thomas and Frederick Allen, individuals associated with the YGz.  GX 150; GX 151. Accordingly there was ample testimony about frequent narcotic sales, as well as witness testimony from which the jury could have inferred that Felder participated in daily sales of crack cocaine, easily adding up to at least 280 grams.  *United States v. Thompson*, 528 F.3d 110, 119 (2d Cir. 2008), *as amended* (July 1, 2008) (finding sufficient evidence to support that defendants could have reasonably foreseen that the conspiracy would involve distribution of a specific quantity because "[t]here was ample testimony describing frequent narcotics sales by members of the conspiracy, and witnesses testified that [the defendants themselves] participated in daily sales of numerous small packets of crack cocaine.").

There was also ample testimony from which the jury could have reasonably inferred that Felder was a leader of the Young Gunners who would have had insight into the scope of its drug operation.  Tr. 76 (when Felder hung out with others outside the Towers, he was shown a great deal of respect), 191-92 (Felder appeared to have a leadership role in the Young Gunners), 309 (Felder "stood out" from other Young Gunners; "everybody report[ed] to him;" and when he walked on the plaza, everything stopped).

12

From all of this evidence, the jury could have inferred that it was reasonably foreseeable to Felder that 280 grams or more of crack cocaine would be possessed and distributed by the conspiracy.  *United States v. Richards,* 302 F.3d 58, 70 (2d Cir. 2002) (affirming district court's finding that defendant could have reasonably foreseen 100 kilograms or more of marijuana based on the quantities that he "personally received and the amounts he should have known others were receiving, given his overall knowledge of [the] marijuana operation").  "'A judgment of acquittal' is warranted 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Jiau*, 734 F.3d at 152 (quoting *Espaillet*, 380 F.3d at 718) (alteration omitted).  That standard is not met here.  For the foregoing reasons, Felder's request for acquittal is DENIED.[6]

## CONCLUSION

For the reasons stated above, Defendants' motions for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure are DENIED.  The Clerk of Court is respectfully directed to close Docket Entries 474, 479, and 492.

**SO ORDERED.**

**Date:  October 5, 2016**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

[6]     Felder also argues that Count One of the indictment was constructively amended because the indictment "charged [Felder] with agreeing to distribute/possess with intent to distribute, inter alia, 280 grams of cocaine base . . . [but] the evidence adduced (viewed in the light most favorable to the Government) established only that 280 grams or more of cocaine was 'actually' distributed."  Felder Mem. at 5.  For the reasons stated above and in response to Martin's motion, there was no discrepancy between the charges in the indictment and the proof at trial. The proof clearly showed that Felder was part of a conspiracy the goal of which was to possess and possess with intent to distribute controlled substances, including crack cocaine, and that it was reasonably foreseeable to Felder that the conspiracy would involve 280 grams or more of crack.