UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   11/23/21
```

-------------------------------------------------------------- X

KAREEM MARTIN,                                    :
                                                  :        19-CV-2706 (VEC)
                               Petitioner,        :        S2 14-CR-546 (VEC)
                                                  :
              -against-                           :        OPINION & ORDER
                                                  :
UNITED STATES OF AMERICA,                         :
                                                  :
                               Respondent.        :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Petitioner Kareem Martin, proceeding *pro se*, moves to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255.  Pet., Dkt. 621.[1]  On June 20, 2016, Mr. Martin was

convicted after trial on two counts: (1) conspiracy to distribute and possess with intent to

distribute marijuana and 280 grams or more of crack cocaine; and (2) brandishing a firearm in

connection with that drug trafficking crime.  *See* Verdict Sheet, Dkt. 446.  On March 6, 2017, the

Court sentenced Mr. Martin to a combined 22 years to be followed by supervised release.  *See*

Judgment, Dkt. 556.  On March 25, 2019, Mr. Martin filed this Section 2255 petition (the

"Petition") seeking to vacate his sentence on the grounds of: (1) ineffective assistance of counsel,

both trial and appellate; (2) unreasonableness of his sentence; and (3) violation of his Due

Process rights in the form of an alleged *Brady* violation.  Upon careful review of Mr. Martin's

arguments and the record, the Court finds that Petitioner's claims lack merit or are procedurally

barred.  Accordingly, the Petition is DENIED.

---
[1]        All citations to the docket refer to Docket No. 14-CR-546.

**BACKGROUND**

On February 8, 2016, Mr. Martin and his co-defendant Tyrone Felder were charged in a five-count superseding indictment.[2]  S2 Superseding Indictment ("Indictment"), Dkt. 296.  Count One charged Mr. Martin with conspiracy to distribute and possess with intent to distribute controlled substances — specifically cocaine, marijuana, and 280 grams or more of cocaine base — in violation of 21 U.S.C. §§ 841(b)(1) and 846.  *Id.* at 1–2.  Count Five charged Petitioner with using, carrying, or possessing a firearm in connection with the crime charged in Count One, as well as brandishing that firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2).  *Id.* at 4–5.

On June 20, 2016, following a one-week jury trial, Mr. Martin was convicted on Counts One and Five.  *See* Verdict Sheet.  At trial, the Government presented evidence that Mr. Martin was a member of the Young Gunners gang ("YGz"), which sold drugs in River Park Towers (the "Towers"), a public housing project in the Bronx.  *See, e.g.*, Trial Tr. at 71–72, 190–91.[3] Members of the YGz worked together to sell drugs in the Towers by referring customers to each other, combining drugs to sell, bagging drugs for distribution, and warning each other about police presence.  *See, e.g.*, *id.* at 190–93.  The Government's proof at trial included evidence demonstrating that Mr. Martin personally sold drugs alongside his co-defendant, participated in robberies and assaults of other drug dealers, and threatened a woman with an outstanding drug debt at gunpoint.  *See, e.g.*, *id.* at 232–33, 238–43, 299–301, 303–08, 357–58, 530.

The Court sentenced Mr. Martin to 22 years' imprisonment to be followed by 5 years' supervised release.  *See* Judgment.  At sentencing, the Court determined Mr. Martin to be a career offender because he was over eighteen at the time of the instant offense, the instant

---

[2]       Counts Two through Four applied only to Mr. Felder.

[3]       *See* Dkt. 458 for Trial Tr. 1–93; Dkt. 460 for Trial Tr. 94–375; Dkt. 462 for Trial Tr. 376–603; Dkt. 464 for Trial Tr. 604–684; and Dkt. 466 for Trial Tr. 685–814.

offense was a controlled substance offense, and he had prior felony convictions for crimes of violence.  *See* Sent. Tr. at 2–3, Dkt. 559.  The Court found that, under the Sentencing Guidelines, Mr. Martin had an offense level of 37 and was in criminal history category VI, yielding a Guidelines range of 360 months to life imprisonment for Count One, plus the mandatory minimum of 7 years on Count Five, bringing the range to 444 months to life imprisonment.  *See id.* at 5, 19.

Mr. Martin appealed his conviction and sentence, arguing, first, that his sentence was procedurally unreasonable, and second, that the evidence was insufficient to demonstrate his knowing participation in a conspiracy to distribute narcotics.  *See* Not. of Appeal, Dkt. 558; *United States v. Felder*, 722 F. App'x 61, 63–64 (2d Cir. 2018).  The Second Circuit affirmed Petitioner's conviction and sentence, *Felder*, 722 F. App'x at 64, and the Supreme Court denied certiorari, *Martin v. United States*, 138 S. Ct. 1337 (2018).

Mr. Martin now seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Pet.  The Government argues that the Petition should be denied in its entirety.  *See* Gov't Opp. at 1, Dkt. 626.[4]

## DISCUSSION

### I.      Legal Framework

The Court notes at the outset that Mr. Martin is proceeding *pro se*, and "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments

---

[4]        After this motion was fully briefed, Petitioner filed a supplemental letter informing the Court that he has personally changed since he was last before the Court in 2016.  *See* Letter, Dkt. 697.  Because Mr. Martin's letter does not raise issues relevant to habeas review, it does not affect the Court's analysis of the merits of the Petition. Nonetheless, the Court was pleased to learn that Mr. Martin has formed "a better bond" with his family and that he wishes to pursue positive activities while incarcerated and after.  *Id.* at 3–4.

that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

Under 28 U.S.C. § 2255, a petitioner "may move the court which imposed [petitioner's] sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Further, "[a]s a general rule[,] § 2255 petitioners may not raise on collateral review a claim previously litigated on direct appeal." *Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998) (citation omitted).

## II.    Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel will be granted only if a petitioner can show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms *and* that he was prejudiced by his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687–96 (1984). This two-prong test is difficult to satisfy. *See United States v. Shi Hui Sun*, No. 09-CR-778, 2013 WL 1947282, at *4 (S.D.N.Y. May 8, 2013) ("[Ineffective assistance of counsel] is a difficult showing to make, as courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case . . . ." (cleaned up)). A petitioner cannot prevail on a claim of ineffective assistance "merely because in hindsight he thinks [his] counsel's trial strategy was inadequate." *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986). The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

To satisfy the second prong of the *Strickland* inquiry, a petitioner must prove prejudice by showing "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 694). In making this determination, the Court must consider the totality of the evidence that was presented to the jury. *Strickland*, 466 U.S. at 695. "Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700 (emphasis added).

A claim of ineffective assistance of appellate counsel is also analyzed under the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Mayo*, 13 F.3d at 533. In this context, appellate counsel is entitled to make strategic decisions and "need not (and should not) raise every nonfrivolous claim" on appeal. *Robbins*, 528 U.S. at 288. As a matter of strategy, appellate counsel "may select from among [colorable claims] in order to maximize the likelihood of success on appeal." *Id.*

### A. Trial Counsel Was Not Ineffective

Mr. Martin argues his trial counsel was ineffective for: (1) failing to call Anthony Givens as a defense witness; (2) failing to introduce into evidence a lawsuit Mr. Martin brought against New York City; (3) failing to impeach the Government's witnesses; and (4) failing to investigate

his interactions with security guards in the Towers where he and other YGzs sold drugs.[5]  Pet. at

4–5, 8, 15–22, 24, 27.[6]  These claims each fail the *Strickland* test.

### 1.    Failure to Call Mr. Givens Does Not Constitute Ineffective Assistance

Mr. Martin asserts that Mr. Givens, one of his co-defendants who pleaded guilty prior to

trial, *see* Dkt. 186, would have testified had he been called that it was he, and not Mr. Martin,

who sold drugs to undercover detectives.  Pet. at 4; Pet. Reply at 5, Dkt. 691.  Mr. Martin does

not provide anything supporting that assertion in his filings, rendering it conclusory.  As the

Government notes, Mr. Givens would have been a complicated witness to present in Mr.

Martin's defense, as he was captured in a video recording "participating in a narcotics

transaction with [Mr.] Martin."  Gov. Opp. at 7 (citing GX 400, Trial Tr. at 405, 461).  Given

Mr. Givens' guilty plea and his appearance in a video that incriminates Mr. Martin, Mr. Martin

has not overcome the "strong presumption" that trial counsel's decision not to call Mr. Givens

was a reasonable "trial strategy."  Accordingly, this decision does not satisfy the first *Strickland*

prong.  *Shi Hui Sun*, 2013 WL 1947282, at *4; *Sanchez*, 790 F.2d at 253.

Even if Mr. Martin could overcome the presumption that his attorney's strategic decision

not to call Mr. Givens was reasonable, he has failed to meet the "heavy burden" of proving

prejudice under *Strickland*.  *See United States v. Cohen*, 427 F.3d 164, 171 (2d Cir. 2005)

(citation omitted).  Analysis of the prejudice prong traditionally starts with the strength of the

---

[5]      Mr. Martin offers additional incidents of alleged ineffective assistance of counsel in his Reply, such as trial counsel's failure to call Jerome Thomas to testify about a video in which he allegedly stated that "everybody does [their] own thing" and the failure to suppress the testimony of an officer regarding Mr. Martin's prior state charges. Pet. Reply at 4, Dkt. 691.  Because Mr. Martin did not raise these issues in his Petition, the Court does not need to reach them here.  Nevertheless, the Court notes that even if these incidents had been properly raised in the Petition, they would not change the Court's analysis.  The Court did not receive the disc Mr. Martin describes in his Reply, *see id.* at 16, that he states shows security guards in the Towers drinking on the job; based on his description of the video, it also would not change the Court's analysis.

[6]      Citations to the Petition refer to the pagination of the PDF document, given the absence of uniform pagination throughout.

Government's case at trial.  *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").  Here, the jury was presented with substantial evidence of Mr. Martin's guilt, including witness testimony, prior statements by Mr. Martin, and physical evidence.  *See*, *e.g.*, Trial Tr. at 232–33, 241, 301, 357–58, 530.   Mr. Martin has not shown that, had he been called, Mr. Givens would testify in the manner Mr. Martin believes, *see* Pet. Reply at 5, or that the jury would have found such testimony from Mr. Givens to be credible given the many witnesses for the Government who testified that Mr. Martin sold narcotics.  Gov. Opp. at 8–9.  Given the strength of the evidence introduced at trial, Mr. Martin's "conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict" fail to satisfy *Strickland*'s prejudice prong.  *United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir. 2003).

## 2.  Failure to Raise Petitioner's Lawsuit Against the City of New York Does Not Constitute Ineffective Assistance

Mr. Martin also alleges that trial counsel was ineffective for failing to introduce into evidence a lawsuit Mr. Martin brought against New York City.  Pet. at 4, 9, 23–24; Pet. Reply at 2–4.  In June 2014, Mr. Martin sued the City of New York for false arrest based on a May 15, 2014, arrest.  *See* Compl., ¶¶ 13–28, *Martin v. The City of New York et al.*, 14-CV-4772, Dkt. 2.  The parties settled in October 2015.  *See* Order of Dismissal, 14-CV-4772, Dkt. 41.  Mr. Martin asserts that he asked his trial counsel repeatedly to investigate and introduce this civil suit during his criminal trial, but trial counsel failed to do so.  Pet. at 4, 9, 23–24; Pet. Reply at 2–4.  He argues that the lawsuit would have supported an alibi defense.  Pet. Reply at 3.

Count One of the Indictment charged a narcotics conspiracy that operated from 2009 through August 2014 and Count Five charged a § 924(c) violation tied to the conspiracy alleged

in Count One.  Neither charged conduct on the specific date of Mr. Martin's allegedly false arrest.  *See* Indictment at 1–2, 4–5.  Lacking clarity on why Mr. Martin's civil lawsuit would be relevant to the criminal charges in this case or why the decision not to attempt to introduce the fact that there had been a civil lawsuit falls outside the bounds of a reasonable trial strategy, this claim also does not meet the first *Strickland* prong.  *Shi Hui Sun*, 2013 WL 1947282, at *4; *Sanchez*, 790 F.2d at 253.

Even if the failure to introduce this evidence were evidence of constitutionally deficient assistance by trial counsel, Mr. Martin has not shown how there is any possibility, let alone a reasonable probability, that this evidence would have led to a different outcome.  *Strickland*, 466 U.S. at 694.  This claim, therefore, also fails the second *Strickland* prong.

### 3. Trial Counsel Did Not Fail to Impeach Witnesses

Mr. Martin argues his trial counsel failed to impeach Government witnesses, including Jorge Figueroa, Nenobia Washington, Cory McCollum, Det. Desiree Gomez, and David Pope, over testimony at trial that differed from their testimony in the Grand Jury.  Pet. at 4–5, 15–22.[7] Mr. Martin also argues counsel should have impeached these witnesses on the basis of a lack of corroborating evidence, such as lack of video footage or police incident reports supporting their statements.  *See*, *e.g.*, *id.* at 15–17, 20.

The record reflects that Mr. Martin's trial counsel cross-examined Mr. Figueroa, Ms. Washington, Mr. McCollum, and Det. Gomez, some at length and others for shorter periods, to impeach their credibility.  Trial Tr. at 124–52, 169–72, 175–77 (cross of Mr. Figueroa); 262–86 (cross of Ms. Washington); 324–331 (cross of Mr. McCollum); 407–443 (cross of Det. Gomez).

---

[7]     Although the Government argues that Mr. Martin "makes no specific argument as to these alleged lies," Gov. Opp. at 10, Mr. Martin does offer some specific examples of differences in testimony.  For example, he asserts that Ms. Washington's testimony regarding the location of a gun on his person differed between the Grand Jury and trial.  Pet. at 16.

Some of this cross-examination raised issues Mr. Martin points to now, such as the lack of corroborating video footage. *Id.* at 147.  Trial counsel's decision not to cross-examine Mr. Pope is presumed "'strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)).

Although it may now appear to Mr. Martin that "alternative avenues of inquiry" may have been more effective, counsel's decision to limit cross-examination "does not evidence objectively unreasonable representation, for '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Rodriguez*, 68 F. App'x 237, 243 (2d Cir. 2003) (quoting *Strickland*, 466 U.S. at 689).  Accordingly, Mr. Martin has failed to overcome the "strong presumption" that defense counsel acted within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Mr. Martin's thin showing of what specific inconsistencies would have been revealed via a different method of impeachment also impedes his ability to argue that failure to impeach these witnesses satisfies *Strickland*'s prejudice prong. *Feyrer*, 333 F.3d at 120.  Without clearer information as to how these witnesses' credibility should have been attacked, the Court can only speculate as to how further or different cross-examination would have changed the jury's calculus.  As a result, this claim also does not meet the second *Strickland* prong.

### 4.    Trial Counsel's Failure To Investigate Security Guards

Mr. Martin also argues his trial counsel was "grossly ineffective" for not obtaining allegedly exculpatory evidence regarding Mr. Martin's interactions with security guards in the Towers.  Pet. at 27.  In fact, trial counsel requested incident reports prepared by anyone who worked for the company that provided security in the Towers.  Trial Tr. at 333.  To allege properly trial counsel's failure to investigate, Mr. Martin must show that counsel's performance

fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–96.  He has made no such showing here, and, as a result, does not meet the first *Strickland* prong.

Because Mr. Martin has failed to describe the exculpatory evidence that his trial counsel failed to investigate and has failed to explain how that evidence would have swung the pendulum at trial in his favor, the Court cannot find that there is a reasonable probability that the verdict would have been different had such evidence been presented to the jury.  *Strickland*, 466 U.S. at 694.

### B.    Appellate Counsel Was Not Ineffective

Mr. Martin asserts that his appellate counsel was ineffective for failing to meet with him in person to discuss his appeal and for not raising various grounds that he believes should have been raised.  Pet. at 4, 6, 23–24.  As noted above, a claim of ineffective assistance of appellate counsel is also analyzed under the *Strickland* standard, and appellate counsel may select among various claims to maximize the chance of success.  *See Robbins*, 528 U.S. at 285, 288.  The proposition that lawyers should meet with their clients is generally unassailable.  But because Mr. Martin does not state how the failure to meet with him affected the appeal, he has not met the first *Strickland* prong.  *Mayo*, 13 F.3d at 533.

Because Mr. Martin has not explained what additional grounds should have been raised on appeal, the Court cannot assess whether the Second Circuit would have reached a different conclusion than it did had all of Mr. Martin's desired issues been raised.  Thus, this claim also does not meet *Strickland*'s prejudice prong.  *Id.* at 534.

### III.     Procedural Reasonableness of Petitioner's Sentence

Mr. Martin argues that his 22-year sentence was too high for the crimes for which he was convicted.  Pet. at 7.  "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)).  This limitation encompasses issues expressly or impliedly decided on appeal.  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (citing *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)).  Mr. Martin raised this precise argument on direct appeal, and the Second Circuit expressly rejected it; the Circuit held that the sentence was not "greater than necessary;" in reaching that conclusion, the Circuit noted that this Court had "departed significantly *downward* from the Guidelines' sentencing range."  *Felder*, 722 F. App'x at 63 (emphasis original) (citations omitted).

In short, this claim is procedurally foreclosed.

### IV.     Mr. Martin Has Not Demonstrated a Violation of His Due Process Rights

Mr. Martin's final assertion is that his due process rights were violated because the Government "withheld material, exculpatory evidence" regarding his interactions with security guards in the Towers — in other words, a *Brady* claim.  Pet. at 27 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  But the Government provided trial counsel with incident logs related to the security that worked at the Towers.  Gov. Opp. at 12–13.  Mr. Martin makes no specific allegation as to what material the Government had in its possession that it failed to disclose, let alone how such material would have been exculpatory.  Pet. at 27.  Therefore, he has not identified a *Brady* violation that would entitle him to relief.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED. The Court declines to issue a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed *in forma pauperis* is therefore denied.

The Clerk of Court is respectfully directed to terminate the open motion at No. 14-CR-546, Dkt. 621, and to close the case at No. 19-CV-2706. The Clerk of Court is further directed to mail a copy of this Opinion to Mr. Martin.

**SO ORDERED.**

**Date:   November 23, 2021**
      **New York, NY**

                              **VALERIE CAPRONI**
                           **United States District Judge**